UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAYNE FAMILY HOMES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-CV-02912 JAR |
| ) | |
| SURVANT AIR SYSTEMS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the United States' Motion for Summary Judgment (Doc. No. 57) and Plaintiff's Motion for Conditional Award of Attorneys' Fees and Costs (Doc. No. 34).

### I. Background

In 2015, Plaintiff Payne Family Homes, LLC ("Payne") contracted with Defendant Survant Air Systems, Inc. ("Survant") to install HVAC systems in homes being built by Payne. Survant ceased operating as a business in July 2016 (the "Agreement"). Pursuant to the Agreement, Payne still owes Survant $155,413.49 ("the Disputed Funds"). Defendants Capitol Group, Inc. ("Capitol Group"), the Funds[1], and Trane U.S. ("Trane") have unsatisfied judgments against Survant and have, at various times, filed garnishment actions against Payne seeking the Disputed Funds. There are also federal tax liens filed against Survant on March 10, 2015.

---

[1] "The Funds" collectively refers to the following defendants: the Trustees of the Sheet Metal Local 36 Welfare Fund, Trustees of the Sheet Metal Local 36 Pension Fund, Trustees of the Sheet Metal Local 36 Vacation Fund, Trustees of the St. Louis Sheet Metal Joint Apprenticeship and Training Fund, Trustees of the Sheet Metal Workers' Local 36 401(k) Plan, Trustees of the St. Louis Metal Working Industry Fund ("MIF"), and the International Association of Sheet Metal, Air, Rail, and Transportation Workers Local Union No. 36 ("S.M.A.R.T.").

As a result of the numerous conflicting claims against the Disputed Funds, Payne filed a Complaint for Interpleader in the Circuit Court of Saint Louis County, Missouri seeking a determination as to which portion, if any, of the funds it owes to Survant should be allocated and distributed to each of the named Defendants. (Doc. No. 2). The United States removed the action to this Court. (Doc. No. 1).

On February 27, 2018, Trane filed a cross-claim against Survant for breach of contract (Count I) and Suit on Account (Count II) and a third-party petition against Richard and Marlene Survant on a Personal Guarantee (Count III). (Doc. No. 22). Survant is in default on Trane's cross-claim. (Doc. Nos. 49, 53).

On March 15, 2018, this Court granted Payne's petition to interplead disputed funds in the amount of $155,413.49 into the Registry of the Court and discharged Payne from any further liability in this case. (Doc. No. 29).

The United States, Capitol Group, and the Funds subsequently filed a joint motion to determine priority, stipulating that the United States' federal tax liens have priority over the claims of Capitol Group and the Funds to the Disputed Funds. (Doc. No. 55). The United States also moved for summary judgment that it is entitled to the entirety of the Disputed Funds plus any accrued interest. Because Trane has also claimed an interest in the Disputed Funds, the Court directed Trane to show cause in writing why the joint motion to determine priority should not be granted. (Doc. No. 56). Trane responded that it did not oppose the entry of an order determining that the United States' federal tax liens have priority over the claims of Capital Group and the Funds; however, Trane did not admit or agree that the United States' federal tax lien has priority over its claims. (Doc. No. 58).

Because there was no objection to the joint motion to determine priority, the Court entered an order determining that the United States' federal tax liens have priority over the claims of Capitol Group and the Funds. (Doc. No. 59). The Court then granted the United States' motion for summary judgment as to Capitol Group and the Funds in light of the parties' stipulation and the Court's order but deferred entering judgment pending its ruling on the remaining defendant, Trane. Trane filed its memorandum in opposition to the United States' motion for summary judgment on October 5, 2018 (Doc. Nos. 60, 61); the United States filed its reply on October 12, 2018 (Doc. No. 62).

## II.     Legal standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

## III. Facts

It is undisputed that Survant filed federal employment tax returns with the IRS for tax periods ending June 30, 2013, September 30, 2013, December 31, 2013, March 31, 2014, and June 30, 2014 (the "delinquent tax periods"). (United States' Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 57-2 at ¶ 1). Survant self-reported federal employment tax liabilities due on each of its federal employment tax returns. (SOF at ¶ 2). A delegate of the Secretary of Treasury made income tax assessments against Survant based on its filed returns. (SOF at ¶ 3). The IRS gave Survant notice of assessments and made demands for payment for the delinquent tax periods on or about the date of the assessments. (SOF at ¶ 3). Survant has not paid its outstanding federal employment tax liabilities for the delinquent tax periods, which liabilities exceed the amount of the Disputed Funds. (SOF at ¶ 4). On or about March 10, 2015, a delegate of the Secretary of the Treasury filed a Notice of Federal Tax Lien pursuant to 26 U.S.C. § 6323(f)(1)(A)(ii) in St. Charles County, Missouri against Survant in the amount of $525,365.41 regarding federal employment tax assessments made against Survant for the delinquent tax periods. (SOF at ¶ 5).

Trane's claim against Survant arises from a June 2014 contract with Survant to establish a "residential" credit account pursuant to Trane's Program Inventory and Credit Agreement, effective May 30, 2014. (Doc. No. 60-2).[2] The Credit Agreement provided Trane with, among other things, a security interest "[t]o secure the due and punctual payment of all Advances made by Trane . . . now or hereafter existing or due or to become due . . ." (Id. at ¶ 3). Between April 4, 2016 and July 13, 2016, Survant issued purchase orders to Trane for HVAC equipment totaling $66,478.10. (Doc. No. 60-1). In addition, between November 5, 2015 and April 8, 2016, Survant

---

[2] The following facts, taken from Trane's memorandum in opposition to the United States' motion, are not in dispute.

4

issued purchase orders pursuant to its "commercial" account with Trane totaling $17,407.01. (Id.) Trane has not filed a UCC financing statement with either the Secretary of State of Missouri or St. Charles County, Missouri regarding the money Survant owes Trane. (SOF at ¶ 7).

## IV. Discussion

### A. United States' motion for summary judgment

The United States asserts that it has valid tax liens, notice of which was properly filed on March 10, 2015, that have priority over Trane's security interest because Trane's security interest is not perfected. (Doc. No. 57-1 at 1, 6-8). In response, Trane argues the United States' priority lien argument only applies to funds that came into existence before notice of the tax liens was filed. Here, Trane's claim includes amounts owed on HVAC equipment Trane sold to Survant after the federal tax lien notice was filed. (Doc. No. 60 at 2). Trane further argues it is entitled to an equitable lien on the Disputed Funds. (Id.). Relying on United States v. McDermott, 507 U.S. 447, 453 (1993), the United States replies that its tax liens attach to all property and rights to property of the taxpayer against whom the lien is filed, including after-acquired property. (Doc. No. 62 at 2-3). The United States takes no position on whether Trane has an equitable lien against the Disputed Funds because regardless, "equitable liens" do not have priority over first-in-time and properly filed notices of federal tax liens. See 26 U.S.C. §§ 6323(a)-(d). (Doc. No. 62 at 4-6).

Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, "priority [of liens] for purposes of federal law is governed by the common-law principle that 'the first in time is the first in right.' " Minn. Dep't of Revenue v. United States, 184 F.3d 725, 728 (8th Cir. 1999) (quoting McDermott, 507 U.S. at 449). The "time" for assessing priority "depends on the time the lien attached to the property in question and became

5

choate." Id. (quoting Cannon Valley Woodwork, Inc. v. Malton Const. Co., 866 F. Supp. 1248, 1250 (D. Minn. 1994)).

Federal tax liens attach to "all property and rights to property" "belonging to" the taxpayer as of the assessment date and continues until the liability is satisfied or becomes unenforceable by lapse of time. See 26 U.S.C. § 6322; Waste Mgmt. of Missouri, Inc. v. Evert, 188 F.3d 1002, 1003-04 (8th Cir. 1999). As a result, the tax lien attaches not only to property belonging to the taxpayer on the assessment date, but also to "after-acquired property" (property acquired after the date the lien attaches) until the tax is paid or collection becomes barred by the statute of limitations. IRS Prac. & Proc. ¶ 14.07[1][b] Scope of the General Tax Lien, 1999 WL 1051006, at *1 (2016); see also McDermott, 113 S. Ct. at 1530-31.

A competing state lien is "choate" for "first in time" purposes only when it has been "perfected" in the sense that there is nothing more to be done, i.e., when "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Tolin, 827 F.3d 809, 812 (8th Cir. 2016) (quoting United States v. City of New Britain, 347 U.S. 81, 84 (1954)).

As noted above, Trane contends it has a security interest against the Disputed Funds. A security interest is defined as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and *the interest has become protected under local law against a subsequent judgment lien* arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth." 26 U.S.C. § 6323(h)(1) (emphasis added). Under Missouri law, perfection of a security interest occurs when a financing statement identifying the debtor, the

6

creditor, and giving a general indication of the collateral, is filed with the Secretary of State. ProGrowth Bank, Inc. v. Wells Fargo Bank, N.A., 558 F.3d 809, 812 (8th Cir. 2009); See Nussbaum v. Springfield R-XII Sch. Dist., No. 6:10-CV-03405 BCW, 2012 WL 5942480, at *5 (W.D. Mo. Nov. 27, 2012), aff'd, 571 Fed. App'x. 513 (8th Cir. 2014); Mo. Rev. Stat. § 400.9-310(a).

There is no dispute that Trane did not file a financing statement with the Secretary of State of Missouri regarding the money owed it by Survant. This is dispositive of the determination of priority between the United States and Trane. Trane does not have a "security interest" in the Disputed Funds as that term is defined in 26 U.S.C. § 6323(h)(1). Therefore, the United States' federal tax liens have priority over Trane's claim to the Disputed Funds.

### B. Payne's motion for attorney's fees

In its motion, Payne acknowledges it is not entitled to its fees and costs related to this interpleader to the extent that such an award would impair the United States' federal tax liens. (Doc. No. 34 at ¶ 4). "[A] stakeholder who interpleads funds into court is not entitled to attorneys' fees if such award would diminish the portion of the interpleaded fund to which the United States is entitled by virtue of its tax lien." Juengel Construction Co. v. Moenning, 78–2 U.S.T.C. ¶ 9812, 85, 745 (E.D. Mo. 1978); see also Millers Mutual Ins. Ass'n v. Wassall, 738 F.2d 302 (8th Cir. 1984). In light of the Court's ruling herein that the United States holds a priority lien on the federal employment tax assessments made against Survant for the delinquent tax periods, which exceed the amount interpleaded in this action, an award of attorneys' fees in this case would impermissibly diminish the amount of the United States' recovery and must be denied in accordance with §§ 6321 and 6322 of the revenue laws. Payne's motion will, therefore, be denied. See B & H Opticks, Inc. v. I.R.S., 633 F. Supp. 1356, 1358 (E.D. Mo. 1986).

7

## V.  Conclusion

Because there is no material fact in dispute as to the priority of the United States' federal tax liens over Trane's claims, the United States' motion for summary judgment will be granted. This does not, however, resolve the case in its entirety given Trane's pending cross-claim against Survant and third-party claim against Marlene and Richard Survant for money damages. Because the Disputed Funds can be disbursed without affecting Trane's pending claims, the Court finds no just reason for delay in entering judgment in favor of the United States regarding the Disputed Funds. See Fed. R. Civ. P. 54(b).

Accordingly,

**IT IS HEREBY ORDERED** that United States' Motion for Summary Judgment [57] is **GRANTED** as to Defendant Trane U.S.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Conditional Award of Attorneys' Fees and Costs [34] is **DENIED.**

A separate Judgment will accompany this Memorandum and Order.

Trane's cross-claim and third-party petition remain set for a non-jury trial on **January 14, 2019.**

Dated this 14th th day of December, 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE